**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 12-60545-CIV-DIMITROULEAS**

ULTIMATE COMBUSTION CO., INC., a
Florida Corporation,

                Plaintiff,

v.

FUECOTECH, INC., a Florida Corporation;
Helpful Technologies, INC, a Florida
Corporation, VICTOR GURIN, an individual, and
ROMAN PRESS, an individual,

                Defendants.

_____/

## PLAINTIFF'S PARTIALLY UNOPPOSED VERIFIED MOTION FOR ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW
### (Unopposed as to the Reasonableness of the Entire Amount of Fees Requested)

Plaintiff, Ultimate Combustion Co., Inc. ("UCC" or "Plaintiff"), a Florida Corporation, by and through the undersigned, hereby files the instant Partially Unopposed Motion for its attorneys' fees, and supporting memorandum of law, under 35 U.S.C. § 285, pursuant to F.R.C.P. 54(d)(2) and Local Rule 7.3, against Defendants, Fuecotech, Inc., Helpful Technologies, Inc., Victor Gurin, and Roman Press ("Defendants"). More specifically, Plaintiff is moving this Court to declare this case "exceptional" under section 285 and award Plaintiff all of its prevailing party attorneys' fees as a result of the Amended Final Judgment entered on February 3, 2014. *See* [Dkt. No. 127].

## I.     INTRODUCTION AND FACTUAL BACKGROUND

The Final Judgment in this case stemmed from this Court's earlier grant of Summary Judgment entered in Plaintiff's favor on November 5, 2013, [Dkt. No. 105], which resulted from nearly two years of unnecessary protracted litigation by Defendants. Indeed, the contentious and obstinate nature of the defenses mounted throughout this case are worsened by the fact that Defendants Gurin and Press were one-time engineers and shareholders of Plaintiff, who resigned from Plaintiff only to surreptitiously join Defendant Gurin's son, Sergy Gurin, as partners in newly developed companies, co-Defendants Helpful Technologies and Fuecotech, to compete *directly* with Plaintiff's endeavors. Worse, Defendants thereafter used the competitive knowledge acquired by Defendants Gurin and Press while working for Plaintiff to secretly compete against Plaintiff, and

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

began to infringe on various patents held by Plaintiff, including the '955 Patent.  Indeed, this Court has found that "Defendants have been secretly competing against Plaintiff for some time" and that "Defendants were good at concealing their activity" before the instant lawsuit was instituted.  [Dkt. No. 76, at 8].  Devastating to Plaintiff's ongoing business, this Court also found that "Defendants are courting customers and investors by claiming that they own Plaintiff's [patented technology], which is causing irreparable harm to Plaintiff." [Dkt. No. 76, at 8].  Such brazenly willful behavior is what has caused this litigation to even exist.  Said another way, this is not a case where Defendants unintentionally stumbled over the same technology coincidentally protected by the '955 Patent.  No, Defendants used their first-hand and proprietary knowledge of the patented technology obtained while working with the Plaintiff and sought out to covertly duplicate it.  Once uncovered by the Plaintiff, this litigation made clear that it was then Defendants' modus operandi to not only disregard every Court Order telling them to stop, but also to unnecessarily prolong this litigation by alleging meritless defenses to their willful infringement, disregarding the Court's claim construction, and engaging in other litigation misconduct.

Specifically, in the context of Defendants' actions during this litigation, the vexatious nature of their behavior can further be demonstrated by their repeated failures to abide by this Court's preliminary and permanent injunction orders entered on September 28, 2012 and November 5, 2013, respectively.  *See* [Dkt. Nos. 76, 105].  For example, in contumacious disregard of this Court's Preliminary Injunction Order, Defendants unwaveringly continued to infringe at least Claim 8 of the '955 Patent, and, when caught (*again*) by Plaintiff, shamelessly attempted to excuse their behavior by claiming that: (1) this Court erred in construing the patent claims, and a properly construed claim would not be infringed by Defendants' accused technology; and (2) Defendants' accused technology comports with other patents they have acquired and, therefore, must not infringe the '955 Patent. *See* [Dkt. Nos. 85, 91].  Regardless of the veracity of these defenses, for over 11 months Defendants violated the preliminary injunction order and did *absolutely nothing* to challenge the propriety of its issuance; nor did Defendants seek the Court's ratification of their "excuses" during this period.  In fact, it was not until Plaintiff confirmed that infringement continued and filed its Motion for Summary Judgment, [Dkt. No. 84], that Defendants suddenly presented these new arguments to this Court.

Acknowledging that "Defendants do not argue that they have altered their device or their conduct with respect to that device" in any way, this Court first rejected Defendants' contention that error exists in the claims construction ruling.  This Court explained,

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

> Defendants . . . failed to adhere to any of the appropriate deadlines. They did not exchange preliminary constructions, provide expert disclosures of claim construction opinions, or engage in claim construction briefing. Consequently, Defendants have waived any arguments as to the appropriate construction of Claim 8 in the 955 Patent.

[Dkt. No. 105, at 6-7]. As to Defendants' only remaining defense, this Court also rejected the notion that Defendants are somehow free to practice Plaintiff's patented technology, *royalty-free*, solely because they have acquired patents that build on Plaintiff's patented technology:

> Defendants' only remaining argument is that their technology comports with other patents and, therefore, does not infringe the 955 Patent. That argument fails. A party practicing in accordance with its own patent can still infringe another's patent. *See Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1110 n.9 (Fed. Cir. 1986) ("[T]hat someone has a patent right to exclude others from making the invention claimed in his patent does not mean that his invention cannot infringe claims of another's patent broad enough to encompass, i.e., to 'dominate,' his invention.") . . . . Therefore, Defendants' acquisition of any other patents is irrelevant to the instant question of whether Defendants have infringed Claim 8 of the 955 Patent.

[Dkt. No. 105, at 7-8 (internal citation omitted)]. The Court thus granted Plaintiff's Summary Judgment Request, declaring (*for a second time*) that Defendants' conduct constitutes infringement, and issued a permanent injunction against Defendants' conduct. At this point, one would think that Defendants would either seek to challenge this Court's pronouncement, or simply move on to different non-infringing endeavors.

Amazingly, however, notwithstanding the grant of summary judgment, Defendants continued to ignore this Court's orders by continuing to practice their infringing technology. Accordingly, Plaintiff was forced to file a Motion for Order to Show Cause (pending at the time of this filing) in an effort to finally encourage compliance with this Court's injunctions. *See* [Dkt. No. 108]. Incredibly, although rejected by this Court just weeks prior, in response to Plaintiff's contempt motion, Defendants *reargued* that this Court erred in its claim construction ruling. *See, e.g.*, [Dkt. No. 128-1, at 147:17 (Defense expert Dr. Lee opining that in determining what a "vessel" is, he "us[ed] the 955 as a guide" and not this Court's definition)]. Moreover, Defendants also *reargued* that their technology is the subject of other pending patent applications, and thus are free to practice the accused technology—another argument rejected just weeks before by this Court. *See, e.g.*, [Dkt. No. 111-15, at 2–3 (Defendant CEO Patrick Krick stating that their "changed" technology is embodied in two patent applications)]. As if this Court never issued the Summary Judgment Order, Defendants not only *reargued* these positions, but they went so far as to rely on virtually every substantive exhibit they had previously attached to their Summary Judgment opposition papers in an effort to defeat Plaintiff's contempt motion. *Compare, e.g.*, [Dkt. Nos. 85-1 thru 85-8 and 85-15 thru 85-17,

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

Defendants' Summary Judgment Exhibits] *with* [Dkt. Nos. 111-1 thru 111-8 and 111-10 thru 111-12, Defendants' identical exhibits filed in response to Order to Show Cause].   Simply put, being unmoved by this Court's prior decisions, Defendants essentially decided to ignore this Court's Summary Judgment Order, and relied on every argument previously rejected by this Court.[1]   And, most recently, in a post-contempt hearing supplemental submission, Defendants argue their position by flatly ignoring the District Court's claims constructions.   See [Dkt. No. 129, and Plaintiff's Reply thereto at Dkt. No. 135].   Such repeated conduct must not be tolerated.

From the outset of litigation, Defendants have engaged in (or are otherwise complicit in) an apparent litigation strategy that involved protracting this litigation so as to delay the inevitable entry of the Final Judgment.   Respectfully, Plaintiff submits that it has come to the point where this Court must declare this case exceptional under section 285 and Defendants must now be charged with the expense of this litigation, *which its chosen litigation strategy and conduct has caused*.   In this vein, it suffices to say that the substantial attorneys' fees incurred by Plaintiff have not only been validated by this Court's entry of preliminary and permanent injunction orders, summary judgment order and, ultimately, the Final Judgment, but it is clear that such fees have been caused as a result of Defendants' resistant and obstinate behavior pre *and* post litigation.   To this end, Plaintiff submits that under well-settled precedent this case should be declared "exceptional," and it is entitled to the reimbursement of its fees.

For the reasons stated below, and pursuant to this Court's inherent authority and 35 U.S.C. § 285, Plaintiff requests that this Court award Plaintiff **$321,962.86**, representing the total fees incurred to date by Plaintiff for the services rendered in this litigation.[2]   As further reasoned below, Plaintiff also asserts that all of its fees rendered in this case are reasonable – *a fact conceded to by Defendants in this motion* – and should be reimbursed by the Defendants.   Anything short would, *at a minimum*,

---

[1] Defendants' counsel's **repeated** suggestion at the Contempt hearing that his clients "respectfully disagree with the [district] court about the injunction" is misleading, *at best. See, e.g.*, [Dkt. No. 128-1, at 30:22-23, 31:11, 32:16, 79:03-04, various instances where counsel noted Defendants' "respectful" disagreement with the issued injunctions]. There is nothing "respectful" about disagreeing with an Order but ignoring its terms; indeed, even if an order is improper, one must adhere to its requirements until it is vacated or modified. *See, e.g., GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386 (1980) ("persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."); *Alley v. U.S. Dept. of Health & Human Svs*, 590 F.3d 1195, 1203 (11th Cir. 2009) (same).

[2] Plaintiff's fee requests runs through February 28, 2014; thus, Plaintiff will supplement this Motion as the successive months are invoiced by its counsel for the months of March and beyond until a ruling on this motion is made.

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

run afoul of precedent indicating that it is the "purpose of 35 U.S.C. § 285 . . . to compensate the prevailing party for its monetary outlays in the prosecution . . . of a patent suit." *Nikko Materials USA, Inc. v. R.E. Svc. Co., Inc.*, 2006 WL 118438, *5 (N.D. Cal. Jan. 13, 2006) (citing *Cent. Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)).

## II.     THIS CASE IS "EXCEPTIONAL" UNDER 35 U.S.C. § 285 AND PLAINTIFF SHOULD RECOVER REASONABLE ATTORNEYS' FEES FROM DEFENDANTS

Upon timely motion by a prevailing party in patent litigation, a district court is vested with the inherent authority of entering an award of attorneys' fees. *See* 35 U.S.C. § 285 (2012) (the court in "exceptional cases may award reasonable attorney fees to the prevailing party"). Prior to any such award being made, however, the district court must make the threshold finding, supported by clear and convincing evidence, that the case was "exceptional." *Id.*; *see also Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992) ("the patent statute authorizes the award of attorney fees to the prevailing party 'in exceptional cases'"). After the case is found to be exceptional, the Court must then determine whether an award of attorney fees is appropriate. *Forest Labs., Inc. v. Abbot Labs.*, 339 F.3d 1324, 1328 (Fed. Cir. 2003). As stated by the Federal Circuit, the "statutory purpose of such award is to reach cases where the interest of justice warrants fee-shifting." *Brooktree Corp.*, 977 F.2d at 1582. As supported in more detail below, Plaintiff has shown that this case is "exceptional" and that attorney fees are justified and appropriate.

### a.   This Case is "Exceptional" under 35 U.S.C. § 285 and Attorney Fees are Justified

"Exceptional cases usually feature some material, inappropriate conduct related to the matter in litigation, such as willful infringement, . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1322–23 (Fed. Cir. 2006). Several non-exhaustive considerations a court may weigh in determining whether a case is "exceptional" or that may provide an independent basis for the same, including whether the losing party: (1) engaged in willful infringement; (2) had knowledge of and deliberately copied the patented invention; (3) engaged in misconduct during the litigation; (4) pursued vexatious litigation; and/or (5) engaged in bad faith litigation. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F. 3d 1317, 1325) (Fed. Cir. 2006) (exceptional case existed where the infringement was willful, and where there was evidence of deliberate copying, and no showing that the infringer had a good-faith belief that its conduct did not

712179v1 999361.0001

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

constitute infringement); *Rambus, Inc. v. Infineon Tech. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) ("Litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (exceptional finding affirmed even where willfulness was not present, although the amount of the fee was reduced because willfulness not found).

Plaintiff submits that regardless of the factor(s) this Court may utilize to determine whether this case meets the "exceptional" threshold, the facts of this case warrant, justify, and require a fee award in this instance to Plaintiff, the prevailing party. More specifically, a review of these relevant factors clearly and convincingly supports a finding that this case was "exceptional" because Defendants: (1) willfully infringed the '955 Patent; (2) had knowledge of and deliberately copied Plaintiff's invention; (3) engaged in misconduct *throughout* this litigation; (4) vexatiously pursued meritless claims and defenses; and (5) engaged in bad faith conduct *throughout* this litigation.

### i. *Willful Infringement*

This Court can properly find this case to be "exceptional" and attorneys' fees justified based on the Defendants' willful infringement of Plaintiff's patent pre and post suit, and at least after this Court issued its preliminary injunction order [Dkt. No. 76]. *Brooktree*, 977 F.2d at 1582 ("a finding of willful infringement meets the criteria of 'exceptional case'"); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 1578 (Fed. Cir. 1990) (affirming the district court's determination of the case being "exceptional" and awarding attorneys' fees to the Plaintiff, based on Defendant's willful infringement of the technology described in the court's injunction order); *Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 741, 746 (W.D. Mich. 1999). Once a finding of willful infringement has been determined, a Court should then explain why attorneys' fees should not be warranted. *See Whiteserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37–38 (Fed. Cir. 2012). Said another way, an award of attorneys' fees typically flows from a finding of willful infringement and, in such instances, it should be explained why attorneys' fees should <u>not</u> be awarded. *See id.*

### a. Pre-suit Willful Infringement

At bar, Plaintiff submits that the underlying facts clearly illustrate Defendants' infringement was committed in a willful manner even prior to filing suit. As more thoroughly detailed above and throughout this litigation, this is **not** a case where a company innocently stumbled upon an idea not known to be owned by its competitor and is suddenly sued. Rather, this is a case where two former

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

engineers and shareholders of the Plaintiff company, surreptitiously joined a newly formed competing business in which the ideas and intellectual property of Plaintiff was being secretly misappropriated. Again, even this Court found that prior to this lawsuit "Defendants have been secretly competing against Plaintiff for some time" and that "Defendants were good at concealing their activity". [Dkt. No. 76, at 8].

Defendants' knowledge of the patents, specifically the '955 Patent, and their coverage is borne by the fact that Defendant Gurin's name is listed on the face of the patent, he was once the owner of said patent, he assigned said patent to the Plaintiff, and was a former employee with the Plaintiff. [Dkt. No. 105, at 2]. As admitted by Defendants Gurin and Press at the preliminary injunction hearing, the technology used by the Defendants included all elements of at least claim 8 of the '955 Patent. Defendants' excuse for infringement was that their technology uses additional components and that the '955 Patent is invalid, two arguments flatly rejected by this Court as being baseless. *See* [Dkt. No. 76, at 3, 7]. Defendant Gurin, a former owner and inventor of the technology covered by the '955 Patent, who was also a former employee of the Plaintiff and who, along with the other defendants, secretly competed against the Plaintiff, can certainly be said to have willfully infringed said patent. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1580 (Fed. Cir. 1986) ("A finding of willful infringement is based on a totality of the circumstances."); *see also Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 412 (D. Del. 2004) ("Willful infringement is a question of fact, probing whether an infringer held a reasonable belief that the patent it infringed was invalid, not infringed, or unenforceable" and that if the "infringer has notice of another's patents, the potential infringer has an affirmative duty of care").

### b.   Post-suit Willful Infringement

Defendants' willful infringement also continued after suit was filed and through two Court Orders [Dkt. No. 76 and No. 105] telling Defendants to cease their infringing conduct. As discussed above, it was found, at the preliminary injunction hearing, that the technology used by the Defendants included all elements of at least claim 8 of the '955 Patent. This blatant infringement was also confirmed by the previous consultant of the Defendant corporations and now CEO of Fuecotech, Patrick Krick, who confirmed the technology used by Defendants after suit was filed included all elements of at least claim 8 of the '955 Patent. *See* [Dkt. No. 128-1, at 45:13-21].

Acknowledging the imminent infringement, this Court enjoined Defendants from infringing the claims of the '955 Patent on September 9, 2012. More specifically, this Court stated that:

> Having now construed the language of Claim 8 and having compared it to Defendants' allegedly infringing device, **the Court finds that Defendants' device infringes each**

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

**and every aspect of Claim 8**. Though Defendants' system adds many new parts, the addition of elements does not avoid infringement of a claim. **The Court finds that Plaintiff is substantially likely to succeed on the merits of its claim that Defendants have infringed the '955 Patent**.

[Dkt. No. 76, at 7 (emphasis added) (internal citations omitted)]. Undeterred, and in contumacious disregard of said Order, Defendants unwaveringly continued to infringe the '955 Patent for over a year, *and still* continue to infringe the '955 Patent to this day, even after having the permanent injunction issue, [Dkt. No. 105 at 8–9]. And, to further demonstrate Defendants' bad faith disregard for the law, Defendants have blatantly ignored this Court's preliminary injunction order, blatantly ignored this Court's Permanent Injunction Order, blatantly ignored this Court's ruling that the accused technology infringes at least Claim 8 of Plaintiff's '955 Patent, and, *after nearly two years of litigation*, are still infringing on Plaintiff's patent rights, excusing their conduct with arguments already rejected by this Court.[3]

More specifically, following the entry of said Order, Plaintiff noticed that Defendants were still continuing to sell, offer for sale, and/or use infringing fuel efficiency technology. *See* [Dkt. No. 108-6, Screen Shots from Defendants' Website (last visited Nov. 18, 2013)]; *see also* [Dkt. No. 108-2, an October 9, 2012 letter from Defendants stating that Defendants were offering for sale "their" fuel conservation technology to RMG in Pittsburg in an effort to gather fundraising and make a business case to investors].

At that point there was no need to verify what the physical components were used in Defendants' fuel efficiency device as the Defendants themselves admitted they have made no changes to the same since issuance of the preliminary injunction. More specifically, Defendants admitted, in email exchanges between counsel for the Defendants and Plaintiff, that they continue to use and offer for sale devices that follow the schematics presented at the preliminary injunction hearing and enjoined by this Court. *See* [Dkt. No. 84-1]. Moreover, Defendants stipulated at the hearing on Plaintiff's Motion for Summary Judgment that they continued to use of the same technology they had used at the time this Court entered the preliminary injunction. [Dkt. No. 108-4]. Indeed, this caused the Court to acknowledge that "Defendants do not argue that they have altered their device or their conduct with respect to that device." [Dkt. No. 105, at 7].

As detailed more fully in the Introduction, *supra*, following the Summary Judgment ruling, Plaintiff was forced to also pursue contempt sanctions against Defendants for their continual failure to abide by this Court's injunctions. As outlined in the Plaintiff's initial and supplemental

---

[3] The contempt proceedings are currently pending before the Magistrate Court.

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

briefing to said contempt motion, [Dkt. Nos. 108, 116, 128], Defendants have given absolutely no regard whatsoever to the District Court's enunciated law in this case. Instead, and inconsistent with every position taking by the Defendants through summary judgment, Defendants allege they have now "changed" their technology and assert that technology does not infringe. Upon further examination, however, it was uncovered that Defendants reach this incorrect conclusion by assigning claim definitions to the '955 Patent inconsistent with this Court's Orders and stating that this "changed" technology is covered by patent applications. What remains constant, however, is that Defendants continued to carry on in the activity enjoined by this Court by infringing at least claim 8 of the '955 Patent. Plaintiff submits that said use and infringement was *and is* willful, thereby justifying a declaration that this case is "exceptional" and awarding Plaintiff its attorneys' fees. *See Stryker Corp.*, 75 F. Supp. 2d at 745–46. "The law of willful infringement does not condone 'minimally tolerable behavior,' but requires prudent and ethical conduct." *Id.* at 745 (citing *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997)). Defendants' conduct has and *still* does not measure up to this standard.

### ii. *Defendants Knowledge and Deliberate Copying of the Patent Invention*

As this Court already described, Defendant Gurin is a former shareholder and officer of Plaintiff and one of the co-inventors of the technology described in the '955 Patent. [Dkt. No. 76, at 1]. Moreover, Defendant Press is also a former executive of the Plaintiff. *Id.* While under the employ of Plaintiff, Defendant Gurin, through his son, created the Defendant entity Helpful Technologies, Inc., a direct competitor of the Plaintiff. *Id.* Both Defendants Gurin and Press are executives of Defendant Fuecotech, Inc., a subsidiary of the Defendant Helpful Technologies, Inc. *Id.* Therefore, as a former employee intimately familiar with not only the proprietary details of the invention, but also Plaintiff's uses and goals of the same, it is clear Defendants both had knowledge of the technology described in the '955 Patent and sought to deliberately copy the same when it started Helpful Technologies, Inc. and began using, selling, and offering to sell the products infringing on the same. This is buttressed by Defendant Gurin's own affidavit, wherein he states that "he is the original idea developer [] and **key inventor** of the patents in suit," that Defendant Helpful Technologies, Inc. only started developing fuel efficiency technology "after [he] left employment at UCC," and that he has "know-how" associated with the patents in suit. [Dkt. No. 85-10, at 1 (emphasis added)].

Again, the technology Defendant Gurin developed while employed with Defendant Helpful Technologies, Inc. has already been found to infringe the '955 Patent, *twice*. As such, there is no

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

doubt and clear and convincing evidence supports that Defendant Gurin's extensive involvement with the patents in suit directly led to copying of the same while under his employ with Defendant Helpful Technologies, Inc.   In fact, as this Court has already noted, "Defendants are courting customers and investors by claiming that they own Plaintiff's patent." [Dkt. No. 76, at 7].   The only evidence put forward by Defendants with regard to how it changed the technology after Defendants Gurin and Press took the same with them to Defendant Helpful Technology, Inc., is that "their" technology adds components to Plaintiff's system. [Dkt. No. 111].   However, as this Court reasoned, "[t]hough Defendants' system adds many new parts, the addition of elements does not avoid infringement of a claim." [Dkt. No. 76, at 7].   Because Defendants have deliberately copied Plaintiff's patented technology and have actually represented that they own the same, a finding of this case being "exceptional" is further supported, independently and in totality with all other factors described herein.

### iii. *Litigation Misconduct, Vexatious Litigation, and Bad Faith Litigation*

From the outset of this case Defendants engaged in misconduct and vexatious litigation in an apparent attempt to unjustifiably protract this litigation and cause the Plaintiff to expend considerable resources.   Defendants' conduct was carried out all while under the belief that one or more of their products clearly infringed one or more claims of the '955 Patent[4].   To begin with, Defendant Gurin's first Answer was an impermissible shotgun-style pleading that included eleven affirmative defenses and ten counter claims.   *See* [Dkt. No. 41].   Defendant Press's first Answer was also in an impermissible shotgun style pleading and included twelve affirmative defenses and four counterclaims.   *See* [Dkt. No. 32].   Most, if not all of these defenses and counterclaims were completely meritless and, in response, Plaintiff was forced to expend time and resources to address each of said 23 affirmative defenses and 14 counter claims.   *See* [Dkt. No. 51].

After spending those resources, Defendants withdrew *all* of their previous defenses and counterclaims and then filed a second Answer, which included the defenses of "best mode" and "illegality" for "execut[ing] documents in english (sic) without providing proper translation and explanation" the USPTO.   *See* [Dkt. No. 52, at 5–6].   The objective lack of merit to these defenses is supported by the fact the Federal Statutes specifically removed "best mode" as a litigation defense, and because even if Defendants' contention were true with regard to Defendants' claims of

---

[4] Defendants continually argue that they have sought multiple third-party opinions concerning whether their device(s) infringes and that this makes their conduct rendered in "good faith."   What Defendants fail to state, however, is that they have these third parties use self-serving definitions of the claims, that are either inconsistent or directly opposite to the Court's definitions, to render their opinions.

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

"illegality," "[t]echnical violations of PTO procedures, absent fraud or intentional deception, are not inequitable conduct as would invalidate the patent." *See* 35 U.S.C. § 282(3)(A) (2012); *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360, 1367 (Fed. Cir. 1999). The lack of merit to said defenses is also buttressed by the fact that Defendants chose not to discuss said defenses in their Opposition to Plaintiff's Motion for a Preliminary Injunction. *See* [Dkt. No. 56].

Rather, as this Court recognized, Defendants attempted to proffer other non-pleaded defenses such as invalidity and lack of utility in response to the preliminary injunction, all of which were deemed "self-serving," "lacked credibility," and otherwise did not come close to meeting Defendants' burden. *See* [Dkt. No. 76, at 3]. Further, in a disingenuous attempt to persuade this Court that its technology did not meet certain limitations of the '955 Patent, Defendant Gurin offered "incredible" testimony that was contradicted and undermined by other testimony of the Defendants. *Id.* at 7. What can only be gleaned from Defendants' conduct is that it was their *modus operandi* to stall the case and frustrate Plaintiff's claims with unsupported defenses and contradictory testimony, all in an effort to avoid and/or delay an inevitable judgment of infringement. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920–21 (Fed. Cir. 2012) ("advancing unfounded arguments that unnecesarily extend[] this litigation and cause…needless litigation expenses . . . . provides a separate and independent basis supporting the district court's determination that this case is exceptional").

An example of Defendants' misconduct and bad faith litigation strategy was also brought to light by Magistrate Snow when discussing Defendants' sudden shift of its non-infringement theory when Plaintiff sought sanctions for violation of Court Orders [Dkt. Nos. 76, 105]. One of the shifted strategies is that they have now "changed" their device. More specifically:

> THE COURT: Yes, and I don't think the defendant is, I hope and I wouldn't want to infer this, this is not saying, okay, "I gave it my best shot before Judge Dimitrouleas and withheld an argument. Now I am making it now." I hope that is not what is going on, **but, in fact, that is what happened**.

[Dkt. No. 128-1, at 87:17–22][emphasis added]. As it turns out, Plaintiff was again forced to prove that nothing in Defendants' device has in fact "changed," but rather they continue to use the same technology that infringes on at least claim 8 of the '955 Patent. To emphasize Defendants' bad faith litigation strategy, not only was said new theory of non-infringement inconsistent with every position previously put forward by Defendants[5] and *only* raised after Plaintiff moved for sanctions, but Defendants opted to *again* change this theory as a result of Plaintiff's briefing [Dkt. Nos. 108, 116].

---

[5] *Compare* [Dkt. No. 85, at 19 (stating that "[t]he **only** technology that the Defendants use **in any of their products** is utilized through patented technology reflected in the 094 Patent, the 694 Patent and the 037

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

More specifically, Defendants initially relied on what was referred to as the "100 Patent Application," claiming that said application is what described their "changed" device. *See* [Dkt. Nos. 111-1 *et seq.*]. At the hearing on Plaintiff's Motion for an Order to Show Cause [Dkt. No. 108], however, Defendants claimed that only the "088 Patent Application"—an application not provided by Defendants until two days before the Show Cause hearing, not the "100 Patent Application" or any of the other patents presented at the Summary Judgment hearing, is what described their "changed" device and was that which they were going to have their expert testify about at the hearing. [ Dkt. No. 128-1, at 46:02–05]. That caused the Court to respond as follows: "[Y]ou have a witness whose report you got that didn't mention it, either, which is now causing me to be a little concerned about sandbagging, for lack of a better term." [Dkt. No. 128-1, at 129:21–23]. Plaintiff submits that said conduct also supports a finding of bad faith and vexatious litigation that would make this case "exceptional." *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 459 F. Supp. 2d 227, 235, 239 (S.D.N.Y. 2006) (finding litigation misconduct based a party making shifting or meritless arguments during the litigation), *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008).

Other misconduct from the Defendants evidencing their scheme of litigating in bad faith can be derived from the proffering of clearly contradictory and inaccurate testimony to this court on the issue of infringement and Defendants' willful disregard of the Court's claim construction. More specifically, as described more fully in the Supplemental Briefing in Support of Plaintiff's Motion for Preliminary Injunction [Dkt. No. 73], Defendants' denied all elements found in claim 8 of the '955 Patent—the claim this Court found to be infringed. *See* [Dkt. No. 56, at 8]; [Dkt. No.76, at 7]. Contradicting said submission was substantially identical language found in other claims of Plaintiff's patents to which Defendants admitted, is found in their technology. *See* [Dkt. No. 73, at 5–7]; [Dkt. No. 56, at 6–7]. Defendants also offered contradictory and misleading testimony at the preliminary injunction hearing on its technology. *See* [Dkt. No. 76, at 7 (acknowledging Defendant Gurin's testimony was undermined by Defendant Press's testimony)]. All of the above further supports a finding of the Defendants' litigation misconduct and litigating in bad faith. Moreover, in a deliberate attempt to avoid sanctions for their continued infringement, Defendants had Dr. Lee—their technical expert—disregard the Court's interpretation of what a "vessel" is and, instead, suggest a new definition ("According to Dr. Lee") that would require the term "vessel" to contain the following additional *narrowing* attributes and variations: (1) "a container that takes in elements," (2) "mixes" the elements, (3) "processes" the elements, (4) "actively controls" the elements, (5) "gets it

Patent")] *with* [Dkt. No. 111-15, at 2 (stating that its technology was now embodied in the 100 and 088 Applications)].

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

to the state that it wants," and (6) "allows it to exit." [Dkt. No. 129, at 2]; *see also* [Dkt. No. 128-1, at 131:03, 147:17 ("Using the definition that's given in 955 as what a vessel is . . . . A vessel is, in using the 955 patent as a guide")].  Plaintiff submits that Defendants desire to ignore this Court's Orders, also supports a finding of bad faith and vexatious litigation.  *See Takeda Chem. Indus., Ltd.*, 459 F. Supp. 2d at 235, 239; *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920 (Fed. Cir. 2012) (affirming the district court's award of fees under § 285 for asserting an improper claim construction theory and using that theory for infringement); *Cartner v. Alamo Group, Inc.*, 2011 LEXIS 108450 (N.D. Ohio Mar. 30, 2011) (finding bad faith conduct for ignoring the court's claim construction in Plaintiff's theory of infringement).

Additionally, Defendants made false or misleading representations in their Response [Dkt. No. 56] to Plaintiff's Motion for a Preliminary Injunction [Dkt. No.43] and engaged in offering irrelevant and meritless arguments concerning infringement and claim construction.  More specifically, in said Response [Dkt. No. 56] Defendants stated that the issuing of an injunction will put Defendants completely out of business because "the **entire** business of Defendants is focused on the combustion industry." [Dkt. No. 56, at 14].  Defendants' website, however, depicts various projects it is involved in outside of the combustion industry.  *See* [Dkt. No. 108-6, Screen Shots from Defendants' Website (last visited Nov. 18, 2013)].  Defendants also continually asserted that their products did not infringe the '955 Patent based on the "inoperability" of the '955 Patent, that their technology utilizes additional components, that certain terms of the '955 Patent were improperly construed, and stating, in a conclusory fashion, that that their technology did not have certain features of the '955 Patent because they, themselves own patents; these defenses, however, were either unpleaded, or determined to be unsupported or meritless arguments and irrelevant.  *See* [Dkt. No. 56, at 4]; [Dkt. No. 76, at 7 ("Though Defendants' system adds many new parts, the addition of elements does not avoid infringement . . . ." and that "Defendants' testimony that Plaintiff's system would not work was self-serving and lacked credibility")]; [Dkt. No. 85, at 16]; [Dkt. No. 105, at 5–7 (holding that Defendants' assert new arguments of claim construction that they have "waived" based on their failure "to adhere to any of the appropriate deadlines" and that their assertion of noninfringement based on their ownership of other patents was "irrelevant")].

Notwithstanding this Court's conclusion that Plaintiff's claim of infringement with respect to claim 8 of the '955 Patent was "substantially likely to succeed," Defendants continued to assert baseless noninfringement contentions.  As such, Plaintiff was forced to continue to litigate this case for over a year from the Court's decision [Dkt. No. 76] and move for summary judgment with regard to the same.  Plaintiff submits that Defendants' failure to concede infringement, despite a clear

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

indication from this Court that it did infringe, also serves as evidence of Defendants' misconduct that protracted this litigation. *See Bendiz Commercial Vehicle, Sys, LLC v. Haldex Brake Prod. Corp.*, 2011 U.S. Dist. LEXIS 312 at * 5 (N.D. Ohio Jan. 3, 2011) (finding the Defendant engaged in litigation misconduct because Defendant "and its attorney s refused to concede actual infringe despite their clear knowledge that the [products] infringed").

Because Defendants have engaged in bad faith and vexatious litigation tactics from the onset of this case, Plaintiff submits that a finding of this case being "exceptional" is further supported, independently and in totality with all other factors described herein.

*Conclusion*: The above factors, alone, and independent of one another, support a finding of this case being deemed "exceptional." A case similar to the one *sub judice* is *Beckerman Instruments, Inc. v. LKB Produkter AB*. 892 F.2d 1547 (Fed. Cir. 1989). In *Beckerman Instruments, Inc.*, after the Defendant was found liable for patent infringement based on its use and sales of a computer chip patented by the Plaintiff, the court entered a permanent injunction ordering the defendant to surrender all infringing products to the Plaintiff. *Id.* at 1549. The Defendant violated the court's order by shipping some of its products to its foreign counterpart instead of surrendering them to the Plaintiff. *Id.* The district court declared the case "exceptional" under 35 U.S.C. § 285 relying on the "alleged violations of the injunction and [Defendant's] vexation litigation strategy," and awarded Plaintiff their attorney fees and expenses. *Id.* at 1549–50. The district court provided three examples of Defendant's litigation strategy that led to a conclusion of vexatious litigation conduct, i.e., "the jurisdiction defense which was dropped, the antitrust counterclaim which was dropped, and the inequitable conduct defense which was found to be baseless." *Id.* at 1551. The Federal Circuit affirmed the award of attorney fees first because of the record supporting Defendant's vexatious litigation conduct, reasoning the district judge is "in the best position to monitor [Defendant's] litigation 'strategy.'" *Id.* at 1552.

The Federal Circuit also affirmed the award of attorney fees under a separate and independent basis, or the Defendant's violation of the court's injunction. *Id.* Specifically, the Federal Circuit stated:

> [W]e are satisfied that a fair reading of the district court's opinion indicates that the violations of the injunction constituted an additional basis for finding exceptional circumstances. Such activity could certainly be said to fall under the category of "litigation misconduct." And while [Defendant] contends that the violations of the injunction occurred through honest mistake and oversight, we agree with the district court that the injunction is **clear on its face**.

*Beckerman Instruments, Inc.*, 892 F.2d at 1552 (emphasis added).

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

As described above, Defendants' conduct makes clear that it was their litigation strategy to argue or submit as many meritless defenses or arguments as possible in order to protract the resolution of this case as long as possible and generate more expenses expended by the Plaintiff because they knew "their" technology at least infringed claim 8 of the '955 Patent. Defendants Gurin and Press directly procured the technology from Plaintiff during their employment with Plaintiff, never changed said technology, and continued to willfully infringe the '955 Patent even in contravention of the clear and plain language of this Court's preliminary injunction [Dkt. No. 76] and permanent injunction [Dkt. No. 105].

## III.   PLAINTIFF REQUESTS RECOCVERY OF $321,962.86 IN REASONABLE ATTORNEYS' FEES FROM DEFENDANTS, <u>THE REASONABLNESS OF WHICH HAS BEEN CONCEDED TO BY DEFENDANTS.</u>

"Attorney fees are allowable if they are based on records that are substantially reconstructed and reasonably accurate." *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1570 (Fed. Cir. 1988). Upon the determination that a case is "exceptional," a district court must then review the fee records provided by the moving party to determine the reasonableness of the fee being requested. "A court determines the amount of an award of reasonable attorneys' fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *see also Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983) ("In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended."). This "lodestar" may then be adjusted based upon other considerations, which include the results obtained and the quality of representation. *See Duckworth*, 97 F.3d at 1396 (11th Cir. 1996). This approach carries a strong presumption of "reasonableness," and "begins with the calculation of the 'lodestar' amount, an initial estimate of reasonable attorney fees calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate for attorneys and paralegals." *Takeda Chem. Indus., LTD. v. Mylan Lab., Inc.*, 2007 WL 840368, *2 (S.D.N.Y. Mar. 21, 2007), *aff'd*, 549 F.3d 1381 (Fed. Cir. 2008).

"'The most critical factor' in determining the amount of a fee award 'is the degree of success obtained.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In this vein, the Federal Circuit has stated, "[w]here…a prevailing party 'has obtained excellent results, his attorneys should recover a full compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988)). As alluded to previously, "'[t]he purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

prevailing party for its monetary outlays in the prosecution or defense of the suit.'" *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)). These recoverable "monetary outlays" may include the recovery of "separate expenses actually billed for secretaries and paralegals, lodging expenses, other disbursements in connection with the legal services rendered, and post-judgment interest." *Marctec, LLC v. Johnson & Johnson*, 2010 WL 680490, at *9 (S.D. Ill. Feb. 23, 2010).

As the moving party, Plaintiff is required to submit satisfactory evidence to establish both that the requested rate is in accordance with the prevailing market rate and that the hours expended on the litigation are reasonable. *Duckworth*, 97 F.3d at 1396. A reasonable hourly rate is generally determined by the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *See id.* In patent infringement cases, reasonableness of the hourly rate for the attorneys can be proven by reliance on the Economic Survey published by the American Intellectual Property Law Association ("AIPLA"). *See View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000); Amsted Industries Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 379 (Fed. Cir. 1994). The Court's determination of a reasonable number of hours billed requires attorneys to use "billing judgment" and exclude hours that would be unreasonable to bill to a client. *See Duckworth*, 97 F.3d at 1396.

The full extent of damages in this case is difficult to ascertain with any precision as Defendants' infringement has curbed Plaintiff's efforts to monetize the technology at issue, and because this technology is relatively new to the market. That said, because of the potential value of Plaintiff's technology and the impact it could have on such a vital part of our economy (i.e., fuel consumption), one could easily argue that a potential royalty award would exceed $10 million, if such was worth pursuing in this instance.[6] To this end, the AIPLA Report of the Economic Survey 2013 (the "AIPLA Economic Survey"), reports the average total costs in the Metro Southeast area for a patent infringement case valued: (1) at less than 1 million dollars; (2) between $1 million and $10 million; (3) between $10 million and $25 million; and (4) more than $25 million. The total breakdown for each of these categories for the Metro Southeast area, as reported by the AIPLA Economic Survey, is summarized as follows:

---

[6] Defendants have not shown any sign or ability to respond to a multi-million dollar judgment, and so this is partially why Plaintiff decided to voluntarily dismiss its Second Amended Complaint post-summary judgment after this Court entered a Permanent Injunction. At this juncture, Plaintiff decided after much contemplation that an Injunction is more critical to the survival of Plaintiff's enterprise than obtaining an apparent uncollectible multi-million dollar judgment, as the continued harm to Plaintiff's endeavors is truly irreparable.

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

| Case Value | Average Cost Through Discovery | Average Cost Through Trial |
|---|---|---|
| less than $1 million | $450,000 | $650,000 |
| between $1 million and $10 million | $9400,000 | $1,867,000 |
| between $10 million and $25 million | $2,660,000 | $4,583,000 |
| more than $25 million | $3,225,000 | $5,375,000 |

A true and correct copy of the AIPLA Economic Survey is attached hereto as Exhibit "A."

Accordingly, guided by the AIPLA Economic Survey alone, Plaintiff respectfully submits that it's request for **$321,962.86**, which is far ***below*** even the lowest category reported in the AIPLA Economic Survey, should be viewed as entirely reasonable, and thus should be awarded to Plaintiff. The amount requested by the Plaintiff is even more substantiated considering Plaintiff went past the discovery stage and successfully obtained summary judgment, while also drafting numerous post-judgment pleadings and conducting evidentiary hearings regarding Plaintiff's Motion for Order to Show Cause why Defendants should not be sanctioned for violating this Court's Orders.

Moreover, even notwithstanding the AIPLA Economic Survey, Plaintiff's attorneys' fees are also reasonable under a traditional lodestar analysis. That is, Plaintiff's counsel charged a reasonable rate and expended a reasonable amount of hours in this litigation. As reflected in recent decisions entered in the Southern District of Florida, a reasonable hourly rate for attorneys in this market ranges between $350-$500 per hour depending on the skill level of the attorney. *See Golf Clubs Away, LLC v. Hostway Corp.*, No. 11–62326–CIV, 2012 WL 2912709 (S.D. Fla. July 16, 2012); *see also MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10–22963–CIV, 2013 WL 1289261 (S.D. Fla. Mar.28, 2013) (awarding rates between $350-$500); *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2013WL 6238647 (S.D. Fla. Dec. 3, 2013) (awarding rates between $220-$565). Given the complex patent infringement issues raised in this case, the rates charged by the attorneys involved, whose hourly rates range approximately between $200 - $360, are entirely reasonable especially given the extensive experience of said attorneys as reflected in the Declarations of Alexander Brown, Esq. and Scott Smiley, Esq., which are attached hereto as Exhibits "B," "C," *respectively.* Next, as to the number of hours reasonably expended, Defendants have attached the billing statements for Defendants' attorneys to the Affidavits of Counsel, said billing

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

statement identified as Exhibits "B-1" and "B-2", and "C-1" and "C-2", *respectively*. To further evidence the reasonableness of the hours billed by counsel for the Plaintiff and prevent any possibility of redundant or duplicate billing from both firms involved in this case, it should be noticed that not only has Plaintiff's counsel reduced their rates below what they typically charge for patent infringement litigation, but numerous billings entries have been reduced to "no charge", and several other discounts have been extended throughout the invoicing in this case.[7]

This case involved contentious dispute between the parties related to a Patent that was known by Defendants to be infringing even before suit was filed. Due to Defendants' abusive and bad faith litigation tactics, Plaintiffs were forced to defend several irrelevant and meritless theories of noninfringement, including those presented at the Summary Judgment hearing which Plaintiff prepared for and attended. Plaintiff also prepared for and appeared at two full evidentiary hearings in this case: (1) Plaintiff's Motion for Preliminary Injunction [Dkt. No. 43] and (2) Plaintiff's Motion for Order to Show Cause [Dkt. No. 108]. Based on the considerable activity in the present case, the amount of hours billed through January 31, 2014 (*to wit*: 1406 hours) is reasonable. Accordingly, Plaintiff should be awarded the full amount of the fees requested or other relief this Court deems proper and just considering the nature of the case and conduct of Defendants.

**WHEREFORE**, Plaintiff Ultimate Combustion Co., Inc., by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 54(d) and 35 U.S.C. § 285, respectfully requests that this Court enter an Order declaring this case to be "exceptional" within the meaning of 35 U.S.C. § 285, and awarding Plaintiff recovery of its reasonably attorneys' fees of **$321,962.86** against Defendants, jointly and severally, and for such other relief as this Court deems just and proper.

---

[7] The discounts from Tripp Scott, P.A. alone total $13,973.50 through February 2014.

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

## LOCAL RULE 7.3.A CERTIFICATE

Pursuant to Southern District of Florida Local Rule 7.3.A, Plaintiff's counsel represents that conference was made with counsel for Defendants, whereupon the parties were able to stipulate to the reasonableness of the entire **$321,962.86** amount being requested by Plaintiff, leaving only the issue of entitlement for this Court to consider. Pursuant to the same Local Rule, the undersigned hereby certifies that counsel has fully reviewed the time records and supporting data and that the instant motion is well grounded in fact and justified.

## LOCAL RULE 7.3.A HEARING REQUEST

Pursuant to Southern District of Florida Local Rule 7.3.A, Plaintiff's counsel hereby notifies this Court that Plaintiff is ready, willing and able to participate in a hearing on the matters raised in this Motion should the Court desire Oral Argument on the issues set forth herein. Should such a hearing occur, Plaintiff represents that it is believed that a two-hour hearing should be sufficient to cover the issues presented herein.

**Dated this 14th day of March, 2014.**

Respectfully Submitted,

/s/ ALEXANDER D. BROWN, ESQ.
ALEXANDER D. BROWN, ESQ.
FLA. BAR NO. 752665
adb@trippscott.com
TRIPP SCOTT, P.A.
110 SE Sixth Street, 15th Floor
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiff*

/s/ SCOTT D. SMILEY, ESQ.
SCOTT D. SMILEY, ESQ.
FLA. BAR NO. 678341
scott@conceptlaw.com
THE CONCEPT LAW GROUP, P.A.
200 S. Andrews Ave., Ste. 100
Ft. Lauderdale, Florida 33301
*Co-Counsel for Plaintiff*

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

## <u>VERIFICATION</u>

The above statements are sworn to as being true and correct.

_____
Alexander D. Brown, Esquire

STATE OF FLORIDA     )
                          ) ss:
COUNTY OF BROWARD     )

**BEFORE ME,** this day personally appeared Alexander Brown, who is personally known to me OR who produced _____ as identification for the purposes expressed therein expressed being first duly sworn and says that the preceding information is true and correct.

SWORN TO AND SUBSCRIBED before me this *14th* of *March*, 2014.

_____
NOTARY PUBLIC (SIGNED)

_____
NOTARY PUBLIC (PRINT NAME)
My Commission Expires:
(SEAL)

ELLEN ECKBLAD
MY COMMISSION # EE 046586
EXPIRES: January 10, 2015
Bonded Thru Notary Public Underwriters

*Ultimate Combustion Co., Inc. v. Fuecotech, Inc., et. al.*
Case No.: 12-60545-CIV-Dimitrouleas/Snow

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of March, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ ALEXANDER D. BROWN, ESQ.
ALEXANDER D. BROWN, ESQ.
FLA. BAR NO. 752665
adb@trippscott.com
TRIPP SCOTT, P.A.
110 SE Sixth Street, 15th Floor
Fort Lauderdale, Florida 33301
*Counsel for Plaintiff*

## SERVICE LIST

David J Fiengold, Esq
davidxfeingold@gmail.com
11360 North Jog Road
Suite 102
West Palm Beach, FL 33418

Scott D. Smiley Esq.
scott@conceptlaw.com
The Concept Law Group, P.A.
200 Andrews Avenue South
Suite 100
Fort Lauderdale, FL 33301