UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60545-CIV-DIMITROULEAS/Snow

ULTIMATE COMBUSTION CO., INC. a
Florida corporation,

    Plaintiff,

v

FUECOTECH, INC., a Florida corporation,
HELPFUL TECHNOLOGIES, INC., a Florida
corporation, VICTOR GURIN and ROMAN PRESS,

    Defendants.
_____/

VICTOR GURIN, HELPFUL TECHNOLOGIES, INC.,
and FUECOTECH, INC. and ROMAN PRESS,

    Counter-Claimants,

v.

ULTIMATE COMBUSTION CO., INC.,

    Counter-Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court following a show cause hearing which was held before the undersigned on January 9, 2014. After the evidentiary hearing, the parties supplemented their respective briefs and the matter is now ripe for recommendation.

## I. PROCEDURAL HISTORY

This was an action for willful patent infringement. (ECF No. 34)[1] The Plaintiff is a Florida engineering company specializing in design and manufacture of technologies for improving

---

[1] Counts III through VIII of the Plaintiff's Second Amended Complaint which alleged misappropriation of trade secrets, common law unfair competition, deceptive and unfair trade practices, conversion, breach of fiduciary duty, and breach of confidentiality agreement, were dismissed on January 22, 2014, following a joint stipulation by the parties. (ECF No. 123)

the efficiency of liquid fuel engines. The lawsuit involved a fuel conditioning and combustion chamber built and operated by the Defendants which the Plaintiff alleged infringed on United States Patent No. 7,406,955 ("955 Patent").[2] The Defendants own separate patents: the '694 and '037 Patents, which were, despite Plaintiff's objections, issued by the United States Patent and Trademark Office ("USPTO"), and the '094 Patent which pre-dates the '955 Patent.

On September 27, 2012, the Court granted the Plaintiff's motion for preliminary injunction enjoining the Defendants from "directly or indirectly . . . engaging in any conduct that would infringe on the claims of United States Patent No. 7,406,955 during the duration of this litigation." (ECF No. 76) On November 6, 2013, the Court granted the Plaintiff's motion for summary judgment as to the Plaintiff's claim of infringement with respect to Claim 8 of the '955 Patent, and permanently enjoined the Defendants from any further infringement. (ECF No. 105) The Court rejected the Defendants' argument that it should have considered the '955 Patent disclosure or the '955 Patent history, which they asserted would have led to the conclusion that the Fuecotech system does not infringe on the '955 Patent. Instead, the Court relied on the construction of Claim 8 contained in its preliminary injunction order because the Defendants waived any argument as to the appropriate construction of the '955 Patent by failing to adhere to any of the deadlines agreed to by the parties for submitting claim construction in anticipation of a Markman hearing.[3] The Court

---

[2] The '955 Patent describes technology which injects gas bubbles into liquid fuel for the purpose of achieving better fuel efficiency in larger internal combustion engines. The technology was invented by Defendant Victor Gurin, who assigned the '955 Patent in 2006 to the Plaintiff in exchange for stock in the Plaintiff.

[3] The order granting the Plaintiff's motion for preliminary injunction construed the eleven Clauses of Claim 8 of the '955 Patent as follows: Clause 1 encompasses any vessel for conditioning fuel; Clause 2 requires a housing for the vessel; Clause 3 requires the vessel to have at least one fuel dispersing nozzle, and may include variations in the number of nozzles; Clause 4 requires a gas inlet port, which encompasses all makes and types of gas inlet ports; Clause 5 requires a conditioned fuel outlet port, encompassing all makes and types of fuel outlet ports; Clause 6 requires at least one level sensor for registering the level of conditioned fuel in the vessel, which encompasses variations in the number of level sensors; Clause 7 stating that liquid fuel will enter the vessel at a higher pressure than the gas pressure does not require a specific pressure; Clause 8 requires the device to allow fuel to enter the vessel through the nozzles at a predetermined rate to fill the vessel at a rate not lower than a rate of the fuel consumption; Clause

concluded that the Defendants' were infringing even if their technology comports with other patents they own, and even though the Defendants' system adds new parts.

The Plaintiff now asserts that the Defendants have continued to infringe on the '955 Patent by advertising infringing products on their website in violation of both the preliminary injunction and the Court's Order on summary judgment permanently enjoining them from doing so. The Defendants assert that the Plaintiffs rely on scant evidence and that they have retained multiple professionals to ensure that all conduct since the preliminary injunction was entered would be in compliance with that Order. Defendants further contend that they have modified their device so that it is no longer infringing on the '955 Patent.

## II. **EVIDENCE PRESENTED**[4]

Attached to its motion for an order to show cause, the Plaintiff offers the following evidence that the Defendants continue to promote and advertise technology which infringes upon the '955 Patent: (1) screen shots of Defendants' website following entry of the preliminary injunction promoting their A2 Fuel Pack which state that the technology "enables an engine's injection system to amplify atomization of fuel infused into combustion chamber concurrently preventing fuel droplets from coalescence....which results in lower fuel expense and cleaner emissions" (ECF No. 108-1); (2) an October 9, 2012 e-mail which the Plaintiff alleges evidences Defendants' efforts to raise funds by offering to sell their fuel conservation technology (ECF No. 108-2); (3) a series of e-mails from February 2013 between counsel which Plaintiff asserts shows that Defendants' continue to use and offer for sale devices following schematics presented at the preliminary injunction hearing which were found by the Court to be infringing (ECF No. 108-3); (4) an exchange from the hearing on the Plaintiff's motion for summary judgment during which Plaintiff's counsel reported to the

---

8 requires the flow to be at a rate not lower than the rate of consumption; Clause 9 requires gas to feed into the vessel; Clause 10 requires the device to feed conditioned fuel into a high pressure pump; and Clause 11 requires an unspecified amount of sensors to register low levels of fuel.

[4] In addition to evidence presented at the show cause hearing, this section will address record evidence which was admitted into evidence on the date of the hearing.

Court that Defendants stipulated that they were continuing to use the same technology that they were at the time the Court entered the preliminary injunction (ECF No. 108-4), which assertion is buttressed by the Defendants' admission in their response to the Plaintiff's motion for summary judgment that the only technology the Defendants were using derived from technology reflected in other patents they own[5] (ECF No. 108-5); and (5) screen shots from the Defendants' website continuing to promote the A2 Fuel Pack technology following summary judgment. (ECF No. 108-6)

Defendants argue that their website was changed to remove all reference to and photos of the '955 Patent, and the letter Plaintiff refers to was merely an effort to raise funds to keep the company afloat, not an effort to sell the '955 technology. Since the entry of the preliminary injunction, the Defendant asserts that it considered three alternative component designs[6], one of which was ultimately chosen for development.

In response to the Court's Order to Show Cause, the Defendants offered numerous affidavits which they contend support their assertion that they have undertaken significant efforts to make sure that their conduct was in compliance with the Court's orders. A considerable amount of the evidence offered consists of affidavits and supporting documentation previously considered and rejected by the Court in connection with the parties' cross motions for summary judgment. However, the Defendants also submitted evidence not previously offered addressing why the technology they have been utilizing since the entry of the preliminary injunction does not infringe the '955 Patent.

Dr. Thomas Ryan, Ph.D., M.E. provided an affidavit in which he avers that the '955 Patent is based upon prior art encompassed in the Defendants' '094 Patent, and that the device used by the Defendants, which is based upon its '694 Patent technology, does not infringe on the '955

---

[5] The '094 Patent, '694 Patent and the '037 Patent. According to the Plaintiff, the preliminary injunction required the Defendants to cease utilizing the very technology to which the Defendants asserted they were confining themselves.

[6] Apparently, none of the three designs has been previously identified in this litigation.

Patent.[7] He further avers that the Defendants' device is different from the Plaintiff's technology in that the vessel used in the Defendants' device comprises only fuel dispersing nozzles, and does not use any fuel level sensors. A second vessel which does use a fuel level sensor is missing a fuel nozzle required by the '955 Patent. The Defendants' device uses a pressure gear fuel pump, rather than a high pressure fuel pump as required by the '955 Patent, and does not use an electronic control system; instead, it relies on the existing engine electronic control system provided by an engine manufacturer. (ECF No. 111-9)

Dr. James H. Lee, Ph.D, PE provided an affidavit in which he avers that the Defendants' prototypes are distinguishable from the '955 Patent because they utilize low pressure fuel pumps and they are not designed for, and do not consist of, any high pressure fuel pumps. Therefore, he concludes that they do not infringe on the '955 Patent. (ECF No. 111-13)

Patrick Krick of Fuel Combustion Technology, Inc. provided an affidavit averring that after the preliminary injunction was entered, company leadership issued verbal and written communications ordering the halt of all technology and business development involving the use of the "absorber" which was the component of the A2 Fuel Pack system which was found to be infringing. Additionally, all personnel were ordered to not utilize high pressure pumps in any A2 Fuel Pack designs. Two alternative options were selected for development. One of the concepts is described by U.S. Patent Application No. 13/541,100 ("the '100 application") and the other, by U.S. Patent Application No. 61/910,088 ("the '088 application"). The technical team expressed a high level of confidence that the neither of these alternatives would infringe the '955 Patent. The '088 technology, which has most recently been integrated into the Defendants' Version 2 A2 Fuel Pack, utilizes low pressure pumps, which the Defendants are convinced do not infringe. (ECF No. 111-15) Mr. Krick also explains that since the preliminary injunction, the company's website does not use

---

[7] The Defendants maintain this argument to preserve it, even though it was previously rejected by the Court.

language referencing the specific nature of the A2 Fuel Pack's components and therefore does not evidence contempt of any of the Court's orders. Id.

   Martin E. Gordon, PE, M.NAFE, registered professional engineer and board certified forensic engineer, provided an affidavit after examining Version 2 of the A2 Fuel Pack at Mr. Krick's request. He concludes that the Version 2 A2 Fuel Pump absorber does not consist of a "vessel," nor does it contain any level sensors. According to Mr. Gordon, the gear pumps it utilizes are low pressure pumps not suited for high pressure applications. (ECF No. 111-16)

   Defendant, Victor Gurin provided an affidavit averring that after the preliminary injunction was entered, the Defendants stopped using Version 1 of the A2 Fuel Pump. He asserts that he has modified the "vessel" design so that it is now obviously different from that described by the '955 Patent, and has ensured that Version 2 of the A2 Fuel Pump utilizes low pressure fuel pumps throughout the apparatus. In particular, he avers that the gas separator used by the new device is not a vessel, distinguishing it from the '955 Patent. It is used for the purpose of removing gas from fuel, not saturating gas into fuel, and the gas separator does not use any fuel dispersing nozzles. The gas separator has tube housing instead of vessel housing which does not utilize any level sensors, and uses a flow-through gasification process which is a different method to saturate gas into fuel. (ECF No. 111-18)

   Defendant, Roman Press, Ph.D provided an affidavit averring that he disassociated from Helpful Technologies, Fuecotech and Victor Gurin on June 14, 2012, prior to the date that the preliminary injunction was entered. He claims never to have personally infringed on the '955 Patent, and states that to his knowledge, neither did Helpful Technologies, Fuecotech, or Victor Gurin. He avers that he has not engaged in the development of any fuel gasification technology since June 14, 2012.

The Defendants also submitted an opinion letter dated January 28, 2013, from attorney William H. Eilberg analyzing whether a proposed product described by the '100 application infringes upon the '955 Patent.[8]

At the hearing on the instant motion the Defendants conceded that all of Plaintiff's arguments are correct with respect to the '955 absorber,[9] but asserted that they should not be held in contempt of the Court's prior orders because since the preliminary injunction was entered their efforts have been focused on alternative technology derived from the '088 Application which utilizes a manifold rather than a vessel in the gasification process.

Patrick Krick who is the acting CEO of Fuecotech Fuel Combustion Technologies, Inc. testified on behalf of the Defendants. Mr. Krick testified that within 48 hours after the preliminary injunction was issued, the Defendants abandoned all efforts to develop the '955 absorber model, including all testing and meetings with clients. He stated that their technical team then came up with three alternative options for development. The first option considered was a membrane absorber as described by the '100 Application. The second alternative was the manifold option described by the '088 Application. The last option was a vortex absorber. The Defendants chose to develop the manifold. It took approximately thirteen months to develop a prototype. Mr. Krick testified that the Defendants began testing the manifold prototype in November 2013, however it is not yet a saleable product. Because the Defendants have been focused on research and development since the preliminary injunction issued, they have not generated any revenues.

Plaintiff's Exhibit 1, a composite exhibit of patent technology filed with the USPTO by the Defendants in connection with the '088 Patent Application was received into evidence. Mr.

---

[8] This letter was submitted to evidence steps that the Defendants took to comply with the preliminary injunction. Although Mr. Eilberg concluded that proposed product which utilizes a membrane absorber would not infringe the '955 Patent, the Defendants elected to develop a product utilizing a manifold instead, which is described in a different patent application.

[9] That is, that continued use of that technology, or technology derived from the other patents owned by the Defendants addressed by the Court in its order on summary judgment, would be in contempt of that order. The Defendants disagree with the ruling, but assert that they have respected it.

Krick testified that the abstract contained therein correctly describes the technology which the Defendants have been utilizing since the entry of the injunction. The abstract describes the invention as "an apparatus for dissolving a gas or combination of gases in a liquid or combination of liquids (called gas absorber) and method enabling the apparatus [to] prepare a gas/liquid solution without bubbles." Mr. Krick testified that the abstract correctly describes a system that has a closed space container where gas comes in through an inlet port, a liquid fuel enters through a manifold by dispersing through nozzles, gas saturates into the dispersed liquid within the container, and then the liquid gas solution exits through a liquid outlet port. According to Mr. Krick, the fuel is never contained because it moves continuously through the entire process. He testified that the closed space container described by the abstract could also be described as an absorber.

Mr. Krick further testified that the '088 Patent Application describes a sensor that controls whether fuel is fed to the absorber. After the absorber absorbs the gas into the liquid fuel, the mixture is fed into the host engine. During the process, some of the absorbed gas will come out of the fuel in the form of bubbles. A separator removes the bubbles. Level sensors in the separator control how much fuel is coming from the absorber. Eventually, the aerated fuel makes it to the fuel injectors.

Mr. Krick testified that, rather than discussing any particular invention with investors, it is his practice to discuss the basic premise of absorbing gas into fuel to achieve greater fuel efficiency. After the injunction issued, the Defendants notified their development partners of the existence of the Order and of the necessity to be in compliance with it. There have been no presentations to investors involving any part of the '955 Patent since the injunction issued, however the Defendants do continue to solicit investors. The Defendants raised $160,000.00 in funds in 2013 which has been used for salary, research and development, and to defend against this lawsuit. Plaintiff's Exhibit 1 was admitted into evidence.

Dr. James Lee testified next on behalf of the Defendants. Dr. Lee is an Assistant Professor of engineering at Rochester Institute of Technology. He has a Ph.D from Texas A & M

University and is a licensed professional engineer. Dr. Lee testified that he has published approximately twenty scholarly articles and has a half dozen patents. He was asked by Mr. Krick to compare the technology the Defendants are now utilizing with the preliminary injunction to determine whether, in Dr. Lee's opinion, the Defendants are in compliance with the Order.

Dr. Lee visited the Defendants' Rochester, New York facility on two separate occasions. The first time he was focused on the pumps used and the pressure level in the Defendants' system as compared to the '955 Patent. The second visit was to determine whether the closed space container utilized by the Defendants is a manifold or vessel, and whether level sensors are used in the Defendants' system. Dr. Lee testified that he was provided a copy of the Court's injunction, along with the '088 Patent Application materials, and the '955 patent. Comparing the materials, he came to the conclusion that the Defendants' utilization of the '088 technology was not in violation of the injunction.

When asked to compare the '088 system with each of the eleven clauses of Claim 8 of the '955 patent, Dr. Lee opined that the '088 system does not infringe, and therefore would not violate the injunction. Dr. Lee testified that the '088 system does not use a vessel. Because ten of the eleven clauses of Claim 8 involve a vessel, Dr. Lee concluded that the Defendants' system does not utilize any of those ten elements. The remaining clause of Claim 8, clause 8, calls for the flow of the fuel supply to exceed the fuel consumed by the engine. Dr. Lee testified that in his opinion, this situation does not exist in the '088 system. He also testified that the '088 system does not utilize a high pressure pump, or level sensors which are called for in clauses 10 and 11 respectively. Based upon the foregoing, Dr. Lee concluded that the two systems are not close to being similar.

Dr. Lee conceded that the affidavit he provided does not specifically reference the '088 Application, nor does it specifically reference the Court's preliminary injunction order which defines the claims in this case. Dr. Lee also conceded that his declaration does not discuss the existence of a vessel and level sensors in the '955 Patent as opposed to what he observed when he examined the '088 prototype in Rochester. He explained that he provided his November 26, 2013

9

affidavit after his first visit to the Rochester facility, but before his second visit, explaining that the focus of the first visit was whether the Defendants' system utilized high pressure pumps. He did not prepare a subsequent report after his second visit, which was focused on whether the Defendants' system utilized a vessel and level sensors.

Dr. Lee testified that the trucks and diesel locomotives in which the Defendants' system would be installed, would utilize a high pressure fuel pump to push fuel and air into a cylinder where it would combust. He testified that the Defendants' system utilizes a sealed, closed space container with a gas inlet port, a nozzle manifold and a liquid outlet port. Gas enters the container through the inlet port, and liquid fuel enters the container through the manifold disbursing through nozzles. Within the container, which has a housing, gas saturates into disbursed liquid droplets, forming a gas liquid solution. The gas liquid solution then flows to the bottom of the container and exits through the liquid outlet port. After the gasified fuel leaves the bottom of the container, it makes its way up to the fuel injector which injects the fuel into the cylinder where it can explode. In order to get through the injector the fuel must go through the engine's high pressure fuel pump.[10]

When asked to distinguish the '955 patent's vessel with the '088 system's closed space container, Dr. Lee explained that the Defendants' system utilizes a passive devise, comparable to a tankless hot water heater. Fuel gets mixed with air as it passes through the system. In contrast, the Plaintiff's system is more comparable to a hot water heater which utilizes a tank. The fuel and gas are combined within the vessel/tank wherein the conditions can be changed as necessary utilizing electronic sensors, which are absent from the Defendants' system. Dr. Lee testified that in his experience, a vessel is never considered a manifold, and a manifold is never considered a vessel.

---

[10] Dr. Lee distinguished the engine's fuel pump, from what he observed in the '088 system, which was isolated from the engine within which it would be installed. According to Dr. Lee, the '088 system does not have a high pressure pump; rather, it utilizes whatever pump exists in the vehicle's engine to inject the gasified fuel into the cylinder.

## III. THE SUPPLEMENTAL BRIEFS

Because the Defendants revealed for the first time just days prior to the hearing that they had been utilizing technology based upon the '088 Application, the Court permitted the parties to submit supplemental closing briefs. The Court instructed the parties to address their respective definitions of the term "vessel."

According to the Plaintiff, the Defendants have chosen to disregard the District Court's binding claim construction, and instead continue to assign their own definition to the claim terms at issue in order to reach the conclusion that the technology they are currently using neither violates the Court's orders, nor infringes upon the '955 patent. The Plaintiff compared the elements of the prototype currently being developed by the Defendants as described by the '088 Application with the controlling '955 claim construction to conclude that the Defendants continue to infringe.

With respect to the requirement that the device utilize a "vessel," the Plaintiff argues that the Court's construction of Clause 1 of Claim 8 is broad enough to include the "closed space container" utilized by the Defendants' prototype. Clause 1 of Claim 8 states that the device must "provide a vessel for fuel conditioning." The Court construed Clause 1 to encompass any vessel for conditioning fuel. According to the Plaintiff, if the Defendants' "closed space container" conditions fuel in any sense, it infringes this element of Claim 8. Because Dr. Lee agreed that the Defendants' container was part of a fuel conditioning system, the Plaintiff concludes that the Defendants' system utilizes a vessel as defined by the Court.

The Defendants contend that they have taken extraordinary measures to comply with the Court's orders. According to their expert's testimony, which is un-refuted by affidavit or otherwise, the device they are developing does not utilize a vessel, and even if the court were to find that a manifold and vessel are the same, level sensors are not present in the '088 design, rendering its method of absorbing gas into fuel materially and substantially different from the method represented by Claim 8 of the '955 patent.

## IV.  RECOMMENDATIONS OF LAW

The issue for the Court is whether the Defendants' conduct following the entry of the preliminary injunction and summary judgment against them has been contemptuous.  "A district court has great discretion when deciding how to enforce violations of its own orders." Eagle Comtronics, Inc. v. Arrow Communications Laboratories, Inc., 305 F.3d 1303, 1314 (Fed. Cir. 2002) citing Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399 (428 (1923).  The purpose of a civil contempt sanction is to coerce compliance with a court order, and to compensate the complainant for losses sustained.  Equal Employment Opportunity Commission v. Guardian Pools, Inc., 828 F.2d 1507, 1515 (11th Cir. 1987).

The initial burden is on the Plaintiff to make a *prima facie* showing that the Defendants have violated the district court's orders.  Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991).  If the Plaintiff meets this burden by clear and convincing evidence, the focus shifts to the Defendants to produce evidence explaining their non-compliance.  Id.  Non-compliance is not excused even if good cause exists to object to the court's orders.  GTE Sylvania, Inc. v. Consumers Union of the United States, 445 U.S. 375, 386 (1980).  A party is expected to obey an injunctive order until it is modified or reversed.  Id.  Additionally, "a lack of intent to violate an injunction alone cannot save an infringer from a finding of contempt." Tivo, Inc. v. Echostar Corporation, 646 F.3d 869, 880 (Fed.Cir. 2011).  Nevertheless, a defendant's diligence and good faith efforts, while not a defense to contempt, may be considered in assessing penalties.  Id.

"The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.  This may entail doing a variety of acts. . . ." EEOC v.Guardian Pools, 828 F.2d at 1515.  The court should consider the magnitude of the harm threatened by the continued disregard for its orders, and the probable effectiveness of any suggested sanction in bringing about the desired result.  Id.  Sanctions should be coercive rather than punitive.  Matter of Trinity Industries, Inc., 876 F.2d 1485, 1493 (11th Cir. 1989).  The court must bear in mind that

contempt is a severe remedy which should not be resorted to where there is doubt as to the wrongfulness of the defendant's conduct. TiVo, Inc. v. Echostar Corp, 646 F.3d at 882.

   The undersigned is guided by this Court's claim construction which is contained in the Court's order preliminarily enjoining the Defendants from infringing activity, and is mindful that to the extent that the Defendants argue that they have modified or removed elements from the technology previously found to infringe, it is the Plaintiff's burden show that the changes do not significantly alter the Defendants' product such that the new technology is more than colorably different from that which was previously enjoined by this Court. TiVo, Inc. v. Echostar Corp, 646 F.3d at 882-83; see also Aevo Corp. v. AE Tech. Co., 727 F.3d 1375, 1382-83 (Fed. Cir. 2013). The court's analysis should focus on "whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" Id. citing Cal. Artificial Stone Paving Co., 113 U.S. 609, 618 (1885). If so, contempt is inappropriate, and the modifying party should be afforded the opportunity to litigate infringement questions at a new trial. Id. citing Arbek Mfg., Inc. v. Moazzam, 55 F.3d 1567, 1570 (Fed. Cir. 1995). While it is possible that in a new infringement proceeding, a fact finder could conclude that a redesigned device continues to infringe the asserted claims, that is not something that should be decided in a contempt proceeding. Id. at 884.

   In its papers, the Plaintiff relied on the assumption that the Defendants have not altered their behavior since the preliminary injunction was issued. In support of this assumption, it cited screen shots from the Defendants' web-site, fund raising efforts on the Defendants' part, e-mails between counsel, and a purported stipulation at summary judgment that Defendants were continuing to utilize technology that the Court preliminarily found to infringe. The Defendants explain that they too are in the business of developing fuel efficiency technology, but their web-site no longer promotes the infringing device, rather it promotes what it has called Version 2. They also assert that since the injunction, they are no longer attempting to sell the infringing technology, and any fund raising has been for the purpose of research and development. The Court has examined the summary

judgment transcript and is satisfied that the Defendant never stipulated on the record that it was continuing to infringe. The Court also is satisfied that the evidence supports the Defendants' assertion that they made efforts to comply with the Court's orders, whether they agreed with them or not, while simultaneously trying to stay in business.

At the evidentiary hearing, Defendants clearly argued for the first time that since the preliminary injunction they have actively been developing a new device which replaces and/or changes features of the device that was held to infringe. The Court must determine whether the Defendants' redesigned prototype is more than colorably different than the absorber model the Defendants were ordered to cease marketing.

The only expert testimony offered on the subject was that of Dr. Lee, who testified that the manifold design utilized in the Defendants' prototype is as different from the Plaintiff's system as a tankless water heater is to a traditional water heater. According to Dr. Lee, the Defendants' device is passive; fuel must pass through the system where it is mixed with air. The Plaintiff's system combines the fuel and gas in a vessel wherein the conditions can be changed as necessary utilizing electronic sensors, which are absent from the Defendants' system. Both devices accomplish the same purpose, but in a completely different way. According to Dr. Lee, a manifold is never a vessel, and the two systems are not close to being similar.

The Plaintiff argues that any changes to the accused technology are insignificant, and spent a considerable amount of time on its argument that the Defendants' prototype continues to infringe. While the Plaintiff may prove to be correct about infringement, it is not appropriate for the Court to make that determination in the context of a contempt proceeding, so long as the Defendants' redesigned device is significantly different from that which was previously held to infringe. Because Dr. Lee's credible testimony that the Defendants' redesign renders the new prototype materially

different is not refuted by any evidence offered by the Plaintiff[11], the Court concludes that a finding of contempt is not appropriate.

## V. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

**RECOMMENDED** that the Plaintiff's request for a finding of contempt and for sanctions against the Defendants be **DENIED.**

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** at Fort Lauderdale, Florida, this 6th day of May, 2014.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record

---

[11] The Defendant correctly argues that the Plaintiff could have, but did not, offer with its supplemental brief an affidavit from its own expert on the subject.